IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE

**UNITED STATES OF AMERICA,**
    **Plaintiff,**

Vs.                                                         Cr. No.: 2:19-cr-20083-001

**JAMES LITTON,**
    **Defendant.**

**SENTENCING MEMORANDUM**

Defendant, James Litton, is forty-five years of age. He is a licensed health care provider, with advanced degrees, and has a long history of helping people. He has no prior criminal history and, prior to this, worked steadily, providing for his family. He has a daughter in college and a son in high school. He appears to present little risk to anyone. A lengthy sentence would be a hardship on his wife, Ashley and his children. Given these circumstances, a sentence of probation with a period of home detention would be "sufficient, but not greater than necessary," to comply with the goals of sentencing set forth in 18 U.S.C. § 3553(a)(2).

**PRINCIPLES BEHIND INCARCERATION**

Does a sentence without incarceration serve the more general concern of deterrence and fulfills the "need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." To consider an individual's long productive, law-abiding life cannot be said to undermine the need for deterrence, nor does it fail to reflect the seriousness of the offense. Similarly, to base a sentence on the practical considerations of Mr. Litton's medical service to the community does not undermine the need for

1

deterrence nor fails to reflect the seriousness of the offense. Indeed, sentencing someone such as Mr. Litton to a long prison sentence may even undermine respect for the law, especially based on a guideline calculation that grossly over calculates the loss.

Thus, the circumstances presented in Mr. Litton's case justify a departure or variance from the Sentencing Guidelines. More importantly, now that the decision in *United States v. Booker*, 543 U.S. 220 (2005) has made the Guidelines advisory and the parsimony clause of 18 U.S.C. § 3553(a) the paramount consideration, the history and characteristics of Mr. Litton show that a period of supervision that includes home detention is "sufficient but not greater necessary to comply with" the goals of sentencing. See, generally, *U.S. v. Cage*, 458 F.3d 537 (6th Cir. 2006); *United States v. Foreman*, 436 F.3d 638, 644 n. 1 (6th Cir.2006). Therefore, a quick review of the 18 U.S.C. § 3553(a) factors is warranted. Beyond what may be permissible under the Guidelines, "the history and characteristics of the defendant," 18 U.S.C. § 3553(a), and the other factors set forth in 18 U.S.C. § 3553(a)(2) support a sentence of probation with a period of home detention. Mr. Litton, therefore, requests this Court to impose just such a sentence.

The Sixth Circuit Court of Appeals has summarized the § 3553 factors that must be considered as:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed--
(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(3) the kinds of sentences available;
(4) the kinds of sentence and the sentencing range establihed . . .;
(5) any pertinent [Sentencing Commission] policy statement . . .;

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims of the offense.

Upon application of these factors, a minimum sentence is warranted in this case.

## APPLICATION OF THE § 3553 FACTORS

I. The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant.

The nature and circumstances of the offense convicted of is of the economical crime variety. He did not create a hardship on any of the people involved and the overall loss is low. Furthermore, the money apparently went into taking care of her mother and other routine expenses. He was not living beyond her means.

Defendant was born into a family that was not "well-off." PSR ¶ 58. Both parents worked and worked hard. He began to work by 14 years of age. Id. He started power lifting at age 17. He attended church with his family. Id. He has been married for over 20 years to a women he has know since he was 14. PSR ¶ 59. She describes him as "the backbone and rock that holds our family together." ¶ 61. James is well educated and worked hard to achieve the level of licensure he has today. ¶¶ 61, 69-71.

II. The Need for the Sentence Imposed--

*(A) To Reflect the Seriousness of the Offense, To Promote Respect for the Law, and to Provide Just Punishment for the Offense.*

This is a serious case, one in which we don't want others to engage in, as economic crimes can hurt beyond the direct loss to the federal government. As in this case, the allegation of incorrectly prescribing opioids carries a physical risk to others, which clearly could hurt

"beyond the direct loss…" The overall loss is relatively low, and the victim is the Federal Government. However, fraud is serious, incorrectly prescribing opioids and we do not downplay that.

As to the "promote respect" and "provide just punishment" elements, Mr. Litton is very sorry for his actions. He admits to his role in the convicted offense. PSR ¶ 35.

*(B) to afford adequate deterrence to criminal conduct;*

If "deterrence" is related to Mr. Litton, he has no record, has engaged in no further negative behavior, and the shame of the offense and the destruction of his livelihood will insure deterrence to him and others. This deterrence while possible needed has had an unintended consequence. Human Rights Watch recently reported on this issue and wrote: "Federal and state government efforts to reduce prescription opioids are inadvertently harming chronic pain patients in the United States, Human Rights Watch said ….. Many patients are involuntarily cut off medications that improve their lives or say they are unable to find a doctor willing to care for them." See, https://www.hrw.org/news/2018/12/18/us-fears-prescribing-hurt-chronic-pain-patients#. The report[1] documents the negative impact of government efforts to reduce opioid prescribing to chronic pain patients. Based on dozens of interviews with patients, medical professionals, pharmacists, public officials, and health experts, the report describes how policies intended to stem the rise in overdose deaths have also driven harmful cutbacks in opioid prescribing to people who need these medications. In fact, this consequence was admitted by the

---

[1] "Not Allowed to Be Compassionate.
Chronic Pain, the Overdose Crisis, and Unintended Harms in the US." (Published on-line on December 18. 2018)
https://www.hrw.org/report/2018/12/18/not-allowed-be-compassionate/chronic-pain-overdose-crisis-and-unintended-harms-us

government's expert witness and affirmed the withdrawal of access to prescription opioids caused the heroin problem, which results in most overdose deaths.

> *(C) to protect the public from further crimes of the defendant…;*

As argued above, this is not a great concern as it applies to Mr. Litton. He will not commit any further crimes, this being a onetime ongoing scheme. Conviction is, in itself, punishment to someone like Mr. Litton.

> *(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;*

Not really applicable in this case.

III.   The Kinds of Sentences Available;

After *Booker*, *Rita*, and others, this Court has wide latitude in determining what is the appropriate sentence. Discretion is granted to the Court upon review as long as the deviations, variances, and § 3553 factors are supported by facts and argument. As argued below, the guidelines are arbitrary, and provides no assistance to this Court in calculation punishment.

In recognition that "the criminal history score is unlikely to take into account all the variations in the seriousness of criminal history that may occur," §4A1.3 provides for both upward and downward departures based on the inadequacy of the otherwise applicable criminal history category. [2] Likewise, a case that doesn't rise to the level of a departure may be well suited for a variance.

---

[2] See also §5H1.8. (Criminal History (Policy Statement)).

A court may depart (and therefore vary) from the applicable guideline range if it finds an aggravating or mitigating circumstance "of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that . . . should result in a sentence different from that described." As discussed in Chapter 1, Part A of the Guidelines Manual:

> The Commission intends the sentencing courts to treat each guideline as carving out a "heartland," a set of typical cases embodying the conduct that each guideline describes. When a court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm, the court may consider whether a departure is warranted.

While we legally agree that Note 3(F)(vi) of USSG §2B1.1 applies textually, it is clearly not meant to be applied in cases such as this. The "street value" of the drugs standard on § 2B1.1 cases wildly inflates the "loss" in these kinds of cases generally, and he in specifically. Mr. Litton was not selling drugs "on the street" nor does is appear this occurred with any know frequency. Only one witness testified to selling the opioids on the street and he was cut off by Mr. Litton.

IV.   The Kinds of Sentence and the Sentencing Range Established. . . .

Although the Sentencing Guidelines call for a sentence of imprisonment, they are advisory only. Probation is always available to the Court. And the Sixth Circuit had upheld non-imprisonment sentences when the defendant faced a more severe Guidelines range than Mr. Litton does. For example, in *United States v. Stall*, the Sixth Circuit upheld a sentence of one day in prison, a lengthy term of supervised release, and the condition that the first year of that sentence be served in home confinement when the defendant when the defendant faced a

guidelines range of 57-71 months imprisonment. 581 F.3d 276, 277, 281 (6th Cir. 2009).  This case, and others like it, recognize that the sentencing analysis is individualized and permits large departures and variances from the Guidelines range where, for example, Guidelines are based on loss tables and do not account for when a defendant has an exemplary record of service to his community, which demonstrates the aberrant nature of the crime in the context of his character as a whole.  In his most recent law review article, Judge Mark W. Bennett, currently in his in his 23rd year as a United States District Court Judge in the Northern District of Iowa, argues that "there is much to

be desired in the federal economic crime-sentencing scheme" calling them "overly harsh sentencing guidelines" that do not aid the trial court in sentencing.[3]

       Imprisoning Mr. Litton is not necessary to fulfill the purposes of sentencing in this case.

       V.       Any Pertinent [Sentencing Commission] Policy Statement . . .;

       Although there are no pertinent policy statements, there is widespread criticism of the loss tables in the Sentencing Guidelines, which "was not developed by the Sentencing Commission using an empirical approach based on data about past sentencing practices." *United States v. Corsey*, 723 F.3d 366, 379 (2d Cir. 2013).  Rather, the loss table is used as a clumsy proxy for the seriousness of the offense, even though it fails to account for any of the substantive aspects of the crime, including its means and the defendant's motivation.  As a result, the U.S. Sentencing Commission studies demonstrate that more than half of sentences that involve the loss table for economic crimes depart below the recommended guidelines range. See, e.g., Mark

---

[3] Mark W. Bennett, et al., JUDGING FEDERAL WHITE-COLLAR FRAUD SENTENCING: AN EMPIRICAL STUDY REVEALING THE NEED FOR FURTHER REFORM, 102 Iowa L. Rev. 939 (2017).  Link to article: https://ilr.law.uiowa.edu/print/volume-102-issue-3/judging-federal-white-collar-fraud-sentencing-an-empirical-study-revealing-the-need-for-further-reform/

Allenbaugh, "Drawn from Nowhere": A Review of the U.S. Sentencing Commission's White Collar Sentencing Guidelines and Loss Data, 26 Fed. Sent. R. 1, 19-27 (2013). According to Mr. Allenbaugh, "[s]everal types of evidence indicate that a primary reason for judicial dissatisfaction with [loss tables], at least as is applies to fraud offenses, is that loss amount (in combination with the many other upward adjustments provided by the guideline) frequently inflates sentences far more than necessary to achieve the purposes of sentencing." Id. at 21.

VI.    The Need to Provide Restitution to any Victims of the Offense.

The restitution has been tendered to counsel and is awaiting word from the Government to tell me where to send it.

VII.    Documented community support.

Included in this filing, attached as collective Exhibit A, are letters in support from the following persons:

1. Gerda Litton – mother of James Litton
2. Leo Davis – Neighbor of James Litton
3. Bobby G. Hooper, Sr. – Patient of James Litton
4. Barbara Looney – Patient of James Litton
5. Bobby Jean Stewart – Medical colleague of James Litton
6. Betty Jean Jackson – Patient of James Litton
7. Christi Jackson – Patient of James Litton

Careful review of the Presentence Report and the § 3553 factors support this Court in sentencing Mr. Litton to a below guideline sentence. Based on this, the filings of counsel, and the arguments at the hearing, a sentence of probation or home confinement is requested.

Respectfully submitted,

The
CLAIBORNE ✠ FERGUSON
Law Firm, P.A.

294 Washington Avenue
Memphis, Tennessee 38103
(901) 529-6400

s/ Claiborne H. Ferguson
CLAIBORNE H. FERGUSON (BPR #: 20457)
Attorney for Defendant

CERTIFICATE OF SERVICE

I, the undersigned, do hereby certify that a true and exact copy of the foregoing document has been served upon all concerned parties, via the Court's electronic filing system, this the 11th day of October 2021.

s/ Claiborne H. Ferguson
CLAIBORNE H. FERGUSON (20457)