IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Cr. No. 2:19-cr-20083-SHL |
| | ) | |
| v. | ) | |
| | ) | |
| JAMES LITTON, | ) | |
| | ) | |
| Defendant. | ) | |

### UNITED STATES' MEMORANDUM IN AID SENTENCING

The United States submits this memorandum in Aid of Sentencing pertaining to James Litton ("Defendant"). The Defendant, a nurse practitioner licensed in the State of Tennessee at the time of the offense, entered a guilty plea to Conspiracy to Commit Health Care Fraud on June 9, 2021, after an April 2021 trial in this matter concluded without a unanimous jury verdict.

As part of his plea, the Defendant acknowledged that the government could prove beyond a reasonable doubt that through his Memphis Clinic, Consolidated Health Services, he and his co-conspirators issued prescriptions for controlled substances, like oxycodone and hydrocodone, outside the course of professional practice; that, on certain occasions, he caused prescriptions to be issued to individuals who had no office visit with him; and that he caused Medicare and Medicaid to be billed as though he had performed an examination and other services for these individuals. Under these circumstances, the Defendant prescribed controlled substances with a street value of approximately $7.6 million, which resulted in Medicare and Medicaid paying the Defendant or Consolidated Health Services approximately $61,145 for services the Defendant did not provide.

Based on the relevant conduct at issue and the sentencing factors articulated in 18 U.S.C. § 3553(a), the government submits that a within-Guidelines-Range sentence of 78 months'

incarceration, three years' supervised release, and restitution in the amount of $61,145 is appropriate.

## Background

In April 2019, a Grand Jury in the Western District of Tennessee returned a one-count indictment charging the Defendant with conspiracy to unlawfully distribute controlled substances outside the scope of professional practice and not for a legitimate medical purpose, in violation of 21 U.S.C. § 846 (Dkt. 4). On February 27, 2020, the Defendant was charged by superseding indictment with conspiracy to commit health care fraud, in violation of 18 U.S.C. § 1349, and conspiracy to unlawfully distribute controlled substances outside the scope of professional practice and not for a legitimate medical purpose, in violation of 21 U.S.C. § 846 (Dkt. 59).

Trial on the charges in the superseding indictment commenced on April 16, 2021 (Dkt. 104). During trial, the government presented testimony from thirteen witnesses, the Defendant testified in the defense case, and, collectively, the parties presented approximately seventy exhibits (Dkt. 115). On April 27, 2021, the jury was unable to reach a unanimous verdict and the Court declared a mistrial (Dkt. 123).

On June 9, 2021, the Defendant entered a guilty plea to the first count of the superseding indictment: Conspiracy to Commit Health Care Fraud, in violation of 18 U.S.C. § 1349 (Dkt. 130). As part of the plea, the defendant agreed to the following regarding what the government could prove beyond a reasonable doubt:

> At all times relevant to this statement of facts, the Defendant was an advanced practice nurse (nurse practitioner) licensed to practice in the State of Tennessee, and also held a registration with the Drug Enforcement Administration ("DEA"), which allowed him to prescribe controlled substances. In addition, he owned and operated Consolidated Health Services, through which he obtained the privilege of billing Medicare and Medicaid for legitimate medical services that he provided to patients.
>
> Between February 2017 and August 2018, the Defendant knowingly and wilfully conspired with at least one other person to defraud the health care benefit programs Medicare and TennCare (Tennessee Medicaid) in connection with the delivery of

or payment for health care benefits, items, or services. Specifically, through his clinic – Consolidated Health Services – in or around Memphis, Tennessee, the Defendant and his co-conspirators issued prescriptions for Schedule II controlled substances, including oxycodone and hydrocodone, outside the course of professional practice.

On certain occasions, the individuals receiving the prescriptions had no office visit with the Defendant. Nonetheless, the Defendant caused the prescriptions to be issued, and caused Medicare and Medicaid to be billed as though he had performed an examination and other services for these individuals. Under the circumstances described above, the Defendant prescribed controlled substances with a street value approximating $7.6 million dollars, which resulted in Medicare and Medicaid paying the Defendant or a company owned and controlled by him approximately $61,145 for services the Defendant did not provide.

### The Defendant's Sentencing Guidelines Range

As indicated in the Government's September 14, 2021, filing (Dkt.140), the government does not object to the Guidelines Range in the Presentence Report. Specifically, the base offense level of 6 is applicable, the prescription drugs involved in the offense (which are the basis for the loss amount) have a street value of approximately $7.6 millions (+18), the Defendant abused a position of trust (+2), and the Defendant was an organizer or leader (+4). The government does not object to the determination that the Defendant accepted responsibility (-2). The government will not move to decrease the Defendant's guidelines calculation by an additional point. Accordingly, the Defendant's Offense Level is 28, and with no criminal history, his corresponding Guidelines Range is 78-97 months. Seventy-eight months' incarceration, which is at the low end of the applicable Guidelines Range, would be an appropriate sentence.

### Section 3553 Sentencing Factors

The factors articulated in 18 U.S.C. § 3553(a) also support the government's proposed sentence of 78 months' incarceration.[1]

---

[1] Restitution, contemplated in § 3553(a)(7), does not appear to be at issue. The restitution amount $61,145, is contemplated in the plea agreement and the Defense has been in communication with the government in an effort to reimburse Medicare and Medicaid for this amount. In addition, the government's Memorandum in Aid of Sentencing does not address § 3553(a)(5).

First, §3553(a)(1), the nature and circumstances of the offense and the history and characteristics of the Defendant, weigh in favor of 78 months' incarceration. The Defendant, a nurse practitioner, conspired with others to violate federal health care law over the course of an eighteen-month period. Indeed, the Defendant was a leader or organizer in the conspiracy. He used his training, education, and position of trust as a medical professional to not only defraud government programs, but to prescribe an approximate street value of more than 7.6 million dollars' worth of prescriptions in the process. In short, the conduct here is serious, and the Defendant's background made that conduct possible.

Time and again, the Defendant used Consolidated Health Services to *not* provide health care services, but nevertheless profit from his practice. Over an eighteen-month period, he fraudulently billed Medicaid and Medicare tens of thousands of dollars, and at the same time, used Consolidated Health Services to improperly provide prescriptions (including for oxycodone and hydrocodone), instead of treating underlying conditions or providing other primary care services. Given the seriousness of this crime and the defendant's role (including his medical training), 78 months' incarceration is appropriate.

Similarly, the factors articulated in § 3553(a)(2)-(4) — discussing the need for the sentence imposed, the kinds of sentences available, and the sentencing range — also weigh in favor of a 78-month period of incarceration. As indicated above, the offense here is a serious crime involving health care fraud and millions of dollars' worth of controlled substances, that spanned an eighteen-month period from February 2017 until August 2018. Even if the defendant is no longer practicing, a period of incarceration is warranted to deter similar conduct from other individuals in the medical community. When medical practitioners abuse the privileges of prescribing controlled substances and of billing public programs, the impact of this criminal activity reverberates through the community, the state, and the country. Here, controlled substance prescriptions were distributed in Western Tennessee without a legitimate medical purpose and both TennCare and Medicare were

4

charged for services that were not provided to beneficiaries. Against this backdrop, the recommended sentence here is within the Guidelines range, and in fact is at the bottom of that range. Accordingly, a 78-month sentence is appropriate considering the need for the sentence, the kinds of sentence available and the sentencing range.

Moreover, to avoid unwarranted sentencing disparities among defendants, as contemplated in 3553(a)(6), the Defendant should be sentenced to a period of incarceration. "Subsection 3553(a)(6) is concerned with national disparities among the many defendants with similar criminal backgrounds convicted of similar criminal conduct." *United States v. Simmons*, 501 F.3d 620, 623 (6th Cir. 2007) (citations omitted), *see also United States v. Peppel*, 707 F.3d 627, 638-39 (6th Cir. 2013). Other medical professionals, who have distributed controlled substances outside the scope of professional practice and not for legitimate medical purposes, have been sentenced to periods of incarceration. *See, e.g.*, *United States v. Larry Boatwright*, Cr. No. 06-20099 (WDTN) (where the 57-year-old defendant, a pharmacist, was convicted of distributing controlled substances outside the scope of professional practice and was sentenced to a period of 188 months (which was later reduced to 151 months)). And defendants convicted of health care fraud, without allegations of unlawful distribution, have been sentenced to periods of incarceration. *See, e.g., United States v. Montgomery*, No. 3:18-CR-00077-2, 2021 WL 1857339, at *3 (M.D. Tenn. May 10, 2021) (discussing, "[t]he defendants in this case . . . are not the only individuals who have been convicted of health care fraud and are not the only offenders without prior convictions. According to a 2019 report by the United States Sentencing Commission, the average custody sentence for individuals convicted of health care fraud is 34 months" (citing *Office of Research and Data, U.S. Sentencing Comm'n, Quick Facts: Health Care Fraud*. (2020). https://www.ussc.gov/research/quick-facts/health-care-fraud)).

Here, multiple factors support a within-Guidelines-Range 78-month period of incarceration. Defendant James Litton was a health care professional who issued (or caused to be

issued) unlawful prescriptions for opioids through his clinic, who abused his position of trust, who was a leader or organizer in a scheme that defrauded Medicare and Medicaid of tens of thousands of dollars, and who prescribed controlled substances with a street value of approximately 7.6 million dollars under these circumstances.

## Conclusion

A sentence of 78 months' incarceration is appropriate based on the Sentencing Guidelines and factors articulated in 18 U.S.C. § 3553(a).

>Respectfully Submitted,
>
>JOSEPH S. BEEMSTERBOER
>Acting Chief, Fraud Section
>United States Department of Justice
>
>          */s/ Jillian Willis*
>JILLIAN D. WILLIS
>Assistant Chief, Health Care Fraud Unit
>United States Department of Justice
>Criminal Division, Fraud Section
>1400 New York Avenue, N.W.
>Washington, D.C. 20005
>(202) 257-5852

CERTIFICATE OF SERVICE

   I certify that, on October 13, 2021, I electronically filed the foregoing document using the ECF system, which will send notification of such filing to counsel for Defendant.

                /s/ *Jillian Willis*
                JILLIAN D. WILLIS
                Assistant Chief, Health Care Fraud Unit
                United States Department of Justice
                Criminal Division, Fraud Section